# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | | | |
|---|---|---|---|
| CHRISTOPHER STEPHEN JONES, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No.: | 3:23-CV-9-KAC-DCP |
| | ) | | |
| STATE OF TENNESSEE, | ) | | |
| TENNESSEE DEPARTMENT OF | ) | | |
| CORRECTION, TENNESSEE | ) | | |
| REHABILITATIVE INITIATIVE IN | ) | | |
| CORRECTION (TRICOR), TONY | ) | | |
| PARKER, LISA HELTON, SHAWN | ) | | |
| PHILLIPS, BRETT COBBLE, MELISSA | ) | | |
| CAMPBELL, ALLAN LEWIS, BRIAN | ) | | |
| COX, TIM MOONEYHAM, JESSICA | ) | | |
| BROWN, and ZACK KOCZWARA, | ) | | |
| | ) | | |
| Defendants. | ) | | |

## MEMORANDUM AND ORDER

Plaintiff, an inmate in the custody of the Tennessee Department of Correction ("TDOC") currently housed at the Hardeman County Correctional Facility ("HCCF"), who is proceeding pro se and *in forma pauperis*, filed an Amended Complaint under 42 U.S.C. §§ 1983, 1985, 1986; 15 U.S.C. § 2087; and 26 U.S.C. § 7623 [Doc. 9]. Plaintiff's Amended Complaint is before the Court for screening pursuant to the Prison Litigation Reform Act ("PLRA"). *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A. As set forth below, the Court permits Plaintiff to proceed on his claims of First Amendment retaliation against Defendants Shawn Phillips, Lisa Helton, Brett Cobble, Allan Lewis, Tim Mooneyham, Jessica Brown, and Zack Koczwara, but dismisses all other claims and Defendants from this action.

# I.    PLRA SCREENING STANDARD

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B); *see also Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim do not state a plausible claim for relief. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a claim upon which relief may be granted. *Twombly*, 550 U.S. at 570. However, the Supreme Court has instructed that courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

# II.    BACKGROUND

As of December 20, 2021, Plaintiff was housed in the Bledsoe County Correctional Complex ("BCCX") [Doc. 9 ¶ 4]. Plaintiff was employed with the Tennessee Rehabilitative Initiative in Correction ("TRICOR") program as a wood scraper for Shaw Flooring Group, a Prison Industry Enhancement Certification Program partner of TRICOR [*Id.* ¶ 20]. On December 20, Plaintiff filed a motion to amend his complaint in *Jones v. Tennessee*, No. 3:21-cv-123 (E.D.

2

Tenn.), a separate lawsuit Plaintiff filed against the State of Tennessee, TDOC, and others concerning the deduction of his TRICOR wages to satisfy court costs and fees [*Id.* ¶ 25].[2]

On December 21, 2021, Plaintiff's TRICOR supervisor, Defendant Lewis, fired Plaintiff from his TRICOR job, in alleged retaliation for Plaintiff's wage-deduction lawsuit and because of Defendant Lewis' personal relationship with Melissa Campbell, a Defendant in that suit [*Id.* ¶ 26]. At the time he was fired from TRICOR, Plaintiff had been on the registry for a reentry clerk's position (TDOC Job Code "CLGOC") for approximately six (6) years [*Id.* ¶ 32]. Plaintiff refused to sign a "Job Drop" form for his TRICOR position and informed all pertinent parties that he consented to being removed from the registry for the reentry clerk position [*Id.* ¶ 27]. Plaintiff asserts that he was nonetheless "forcibly placed into" the reentry clerk position, even though he was not interviewed or tested prior to the assignment as is purportedly required by TDOC policy [*Id.* ¶¶ 27, 32].

On December 22, 2021, Plaintiff filed a prison grievance complaining of the loss of his TRICOR position [*Id.* ¶ 27]. Sergeant Ray Worthington processed the grievance and forwarded it to Defendant Associate Warden of Treatment ("AWT") Cobble on December 27 [*Id.* ¶ 28]. On December 28, Sergeant Worthington informed Plaintiff of Defendant Cobble response to Plaintiff's grievance [*Id.* ¶ 32].[3] Defendant Cobble's response stated that Plaintiff needed to fill the reentry clerk position because the previous reentry clerk had held the position for over sixteen (16) months and Plaintiff was "next" on the registry for the position [*Id.*].

---

[2] That lawsuit was initially filed on April 5, 2021 [*See* Case No. 3:21-cv-123, Doc. 2]. The Court may take judicial notice of its own records. *See* Fed. R. Evid. 201(b)(2); *United States v. Doss*, 563 F.2d 265, 269 n. 2 (6th Cir. 1977).

[3] Plaintiff maintains that Defendant Cobble purported to be Plaintiff's supervisor, even though Defendant Lewis was actually his supervisor [*Id.*].

3

On December 28, 2021, Plaintiff appealed Defendant Cobble's decision and presented arguments to the Grievance Board, comprised of Defendants Brown and Koczwara [*Id.* ¶¶ 32, 33]. At the Grievance Board hearing, Plaintiff argued that (1) the prior clerk had in fact been a reentry clerk for Counselor Susan Garrett for over eight (8) years; (2) Plaintiff had been on the reentry clerk registry for over six (6) years; and (3) Plaintiff was suddenly told that he needed to fill the reentry clerk position the day after he filed his amended complaint in his wage-deduction lawsuit [*Id.*]. Plaintiff also informed the Grievance Board that a few years prior, "the inmate who was in the clerk's position was removed from that position for disciplinary reasons and the position remained vacant during his absence and he was permitted to volunteer in that position until he was permitted by policy to be reassigned as the clerk" [*Id.* ¶ 33]. Plaintiff also submitted a witnessed copy of his December 21, 2021, "Request for Removal from the Job Register" and handwritten portions of TDOC Policy #505.07 [*Id.*]. The Grievance Board ultimately affirmed Defendant Cobble's decision [*Id.*].

After the hearing concluded on December 28, 2021, Defendant Lewis "placed a negative and false Contact Note" in Plaintiff's Tennessee Offender Management Information System ("TOMIS") profile [*Id.* ¶ 34]. This Contact Note stated that Plaintiff "quit" his TRICOR position and then made "job threating [sic] statements" pertaining to one of the supervisors [*Id.*]. Plaintiff did not learn of the contents of the Contact Note until May 12, 2022, when Defendant Mooneyham provided Plaintiff a printout of the Note [*Id.*].

On December 30, 2021, Acting Warden Jonathan Higdon returned Plaintiff's second-step appeal affirming the conclusions of Defendant Cobble and the Grievance Board [*Id.* ¶ 35]. On January 6, 2022, Plaintiff appealed Acting Warden Higdon's determination to Assistant Commissioner Lee Dotson, though the transmission paperwork was backdated to January 4, 2022

4

[*Id.* ¶ 37]. On January 13, 2022, Plaintiff received his final-step grievance response showing that Assistant Commissioner Dotson upheld all previous levels of review [*Id.* ¶ 39].

On January 2, 2022, Plaintiff submitted a "Request for Placement on Job Register" to reapply for a position with TRICOR [*Id.* ¶ 36]. Reentry Counselor Susan Garrett, Plaintiff's then-supervisor, witnessed the request [*Id.*]. On January 12, 2022, Defendant Lewis denied Plaintiff's request, citing the December 28, 2021 Contact Note as justification for the denial [*Id.* ¶ 38].

On April 20, 2022, Plaintiff received a scheduling order setting a trial date in Plaintiff's wage-deduction suit via mail [*Id.* ¶ 41]. That mail was opened, inspected, and logged into the institutional logbook before being given to Plaintiff [*Id.*]. Three (3) weeks later, on May 5, 2022, Defendant Mooneyham informed Plaintiff that Defendant Cobble directed Mooneyham to draw-up reclassification paperwork for Plaintiff's institutional transfer to HCCF [*Id.* ¶ 42]. Defendant Mooneyham stated that the reason for this transfer was that "HCCF had some 'problem children' that they wanted to exchange for some of ours (BCCX)" [*Id.*]. Defendant Mooneyham presented Plaintiff with a "Notice of Classification Hearing" and told Plaintiff he would "try to get him in the hearing on Tuesday, May 10, 2022" [*Id.*].

On May 6, 2022, Plaintiff filed a grievance against Defendant Cobble concerning his intent to transfer Plaintiff [*Id.* ¶ 43]. The grievance was accepted and logged by Sergeant A. Mace, but the issue was deemed non-grievable by all three levels of review [*Id.*]. Also on May 6, 2022, Defendant Mooneyham showed Plaintiff an email from Defendant Cobble containing the names of four (4) inmates selected by Defendant Cobble for "special reclass (someone reclassified outside of their regular annual re-class date) to HCCF" [*Id.* ¶ 44]. Plaintiff recognized two (2) of the other names in the email [*Id.*]. One of those individuals had two (2) ongoing federal civil rights actions

5

pending in the Middle District of Tennessee, and the other was known for filing complaints about his conditions of confinement [*Id*.]. Thus, "Plaintiff was able to deduce, based on the available evidence, that the phrase 'problem children'. . . was in fact a reference to inmates who complain about and expose crimes and unconstitutional conditions within TDOC relating to their incarceration, and that inmates who make such complaints will get labeled and transferred for doing so" [*Id*.].

On May 10, 2022, Plaintiff attended the reclassification hearing [*Id*. ¶ 51]. Defendant Mooneyham printed Plaintiff a copy of the previously mentioned Contact Note [*Id*.]. The reclassification panel consisted of Defendants Mooneyham, Brown, and Koczwara [*Id*. ¶ 52]. Plaintiff gave them each (1) a typed two-page (2-page) statement informing them of the retaliatory nature of the reclassification, the danger reclassification would place him in, and their right to dissent from the recommendation per TDOC Policy #401.08(VI)(E), and (2) a copy of *Farmer v. Brennan*, 511 U.S. 825 (1994) [*Id*.]. The reclassification paperwork listed the "Justification, Program Recommendations, and Summary" as "Life sentence, RNA-Low" and Plaintiff's job assignment "CLGOG" [*Id*.]. No other writing appeared in this section [*Id*.]. Following the hearing, Plaintiff signed the reclassification paperwork but wrote "under duress" next to his signature [*Id*.].

On May 13, 2022, BCCX Warden Shawn Phillips upheld the reclassification decision [*Id*. ¶ 53]. Plaintiff notes that he was housed in BCCX for nearly seven (7) years and knows that dozens of inmates have been housed there for more than ten (10) years [*Id*. ¶ 56]. Plaintiff maintains that he is identical in all meaningful respects to those long-staying inmates other than the fact that he files grievances and lawsuits [*Id*.]. He claims that TDOC has a history of retaliating against inmates who complain about TDOC conditions and expose crimes, which Plaintiff asserts

can be corroborated by cross-referencing inmate filings with their transfer dates in the offender database [*Id*. ¶ 57].

On May 19, 2022, Plaintiff and the other inmates who were scheduled to be transferred the following morning were transported to the clinic to undergo COVID-19 tests [*Id*. ¶ 58]. Plaintiff refused to take the COVID-19 test after confirming with the clinic nurse that he had the right to do so [*Id*.]. Various TDOC staff attempted to convince Plaintiff to take the test, but the nurse informed them that Plaintiff had the right to refuse the test [*Id*.]. Plaintiff was then given an ultimatum: take the test or go to the disciplinary/protective custody unit, otherwise known as "the hole" [*Id*.]. Due to his fear of being transferred to a "gang-infested facility" if he took the test, Plaintiff chose "the hole" [*Id*.]. On May 20, 2022, the clinic nurse came into "the hole" for Plaintiff to sign a medical refusal form [*Id*. ¶ 59]. Plaintiff signed the form, adding the notation "I did not request this test. I'm afraid" [*Id*. ¶ 59]. While in "the hole," Plaintiff had to handwrite everything necessary to pursue his wage-deduction lawsuit, which allegedly caused him great physical suffering from arthritis and mental suffering from worrying [*Id*. at ¶¶ 60, 61].

At around 8:55 a.m. on May 20, 2022, Corporal Bolden from the Office of Investigation and Conduct ("OIC") visited Plaintiff to follow-up on two (2) tip-line calls Plaintiff made to the OIC on or about May 13 and May 17, 2022 [*Id*. ¶ 62]. Corporal Bolden recorded the conversation with Plaintiff's consent, and Plaintiff explained the "escalating retaliatory actions," Plaintiff's efforts to stop the retaliatory acts, and his desire to be protected from transfer [*Id*.].

On May 25, 2022, Counselor D. Padgett came to see Plaintiff in "quarantine"[6] and inquired whether Plaintiff desired to avoid transfer, to which Plaintiff responded affirmatively [*Id*. ¶ 63]. Counselor Padgett filled out a Protective Services Investigation Routing Sheet and indicated that

---

[6] It appears that "quarantine" refers to being housed in "the hole."

he would submit it to the OIC, which Plaintiff contends is not "an available authority for remittance" of that form [*Id*.]. Later that day, Corporal Bolden came to see Plaintiff to develop and complete the routing sheet, even though Plaintiff contends he was the improper person for the task under TDOC Policy # 404.09(IV)(A)(2) [*Id*. ¶ 64]. Corporal Bolden told Plaintiff that he intended to recommend that Plaintiff be transferred back to general population at BCCX [*Id*.]. But later that afternoon, Plaintiff was moved from the front of "the hole" "to back behind the gate that separated the unit's disciplinary from the protective custody inmates" instead of being returned to general population at BCCX [*Id*. ¶ 65].

On May 30, 2022, Plaintiff submitted a request for library services to obtain research necessary to file a motion for preliminary injunction in his wage-deduction lawsuit [*Id*. ¶ 66]. The following day, after Plaintiff repeatedly asked about the library services, Officer L. Houston informed Plaintiff "that the library was told they will now be required to schedule appointments with the Team-1 Unit Manager, Randall Lewis," in order to provide library services to offenders in "the hole" [*Id*. ¶ 67]. On June 8, 2022, the day Plaintiff was returned to general population, Plaintiff went to the legal library and spoke with Legal Aid Gregory Lance and the library officer, Anthony Tuttle [*Id*. ¶ 73]. Lance informed Plaintiff that he had been prepared to visit Plaintiff in "the hole" and called Randall Lewis to schedule an appointment [*Id.*]. However, as of the day Plaintiff was released from "the hole," Unit Manager Lewis had still not provided a time for Lance to visit Plaintiff in "the hole" [*Id*.].

On June 1, 2022, Unit Manager Randall Lewis, Sergeant Luke Burns, and Counselor D. Padgett (the "Protective Services Panel") spoke to Plaintiff in his cell about his "protection issues" [*Id*. ¶ 68]. Randall Lewis told Plaintiff that the Protective Services Panel was going to recommend that he be transferred back to general population at BCCX [*Id*.]. Padgett wrote words to that effect

on a "release contract" frequently used with inmates in protective custody, and Plaintiff, Lewis, Burns, and Padgett all signed the paper [*Id*.]. Unit Manager Lewis advised Plaintiff that it would be up to the Warden to approve the recommendation [*Id*.]. Padgett told Plaintiff that if the recommendation was declined, then Plaintiff and the Protective Services Panel would need to come to an agreement for other arrangements [*Id*.].

On June 8, 2022, Plaintiff was released back into general population at BCCX, but his institutional classification was not changed from HCCF back to BCCX [*Id*. ¶¶ 68, 70]. On June 13, 2022, Plaintiff asked Defendant Mooneyham why he had not been reclassified pursuant to Plaintiff's signed contract and release from protective custody [*Id*. ¶ 71]. Defendant Mooneyham replied, "Why would there be? If I reclassified you, I'd simply classify you to HCCF again" [*Id*.].

On June 9, 2022, an unnamed BCCX staff member advised Plaintiff that Plaintiff was being transferred to HCCF (1) because of the likelihood that he would be hurt at HCCF, and (2) because it was the furthest CoreCivic location from Knoxville to which Plaintiff could be transferred [*Id*. ¶ 74]. This staff member informed Plaintiff that the distance was intended to dissuade Plaintiff from pursuing the wage-deduction case and increase the likelihood that he would lose necessary legal documents in transit to any court hearings [*Id*.]. This staff member also informed Plaintiff that "there is a digital footprint of a retaliatory directive in Plaintiff's case on the STS servers" that "sets Plaintiff's case apart, and that several other staff members have expressed their concern over this case" [*Id*.].

On June 10, 2022,[10] Plaintiff questioned Randall Lewis about the Protective Services Panel's failure to reclassify him or adhere to the terms of the contract they signed, to which Lewis replied that the reclassification had been put "on hold" and that Plaintiff "was not going anywhere

---

[10] Plaintiff states that he had this conversation with Lewis on July 10, 2022, but as he was transferred to HCCF in June, the Court presumes that this was a scrivener's error [*Id*. ¶ 78].

for the time being" [*Id*. ¶ 78].  Despite these assurances, Plaintiff was transferred to HCCF on June 17, 2022 [*Id*.].  Aggrieved by these incidents, Plaintiff filed this lawsuit against Defendants seeking a variety of monetary and injunctive relief [*Id*. at 19-20].

## III.    ANALYSIS

### A.  Retaliation Claims Under 42 U.S.C. § 1983 (Counts One, Two, Three, and Six)

"There are two elements to a . . . [Section] 1983 claim.  First, a plaintiff must allege that a defendant acted under color of state law.  Second, a plaintiff must allege that the defendant's conduct deprived the plaintiff of rights secured under federal law."  *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citing *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010)).  Here, Defendants were acting under color of state law when they took the allegedly retaliatory actions Plaintiff complains of because Defendants only had authority to take such actions by virtue of their respective state-sanctioned positions.  *See Cassady v. Tackett*, 938 F.2d 693, 698 (6th Cir. 1991).

To establish a retaliation claim, Plaintiff must show that: (1) he "engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  "[C]ausation in retaliatory claims may really be considered a two-part inquiry: A plaintiff must show both (1) that the adverse action was proximately caused by an individual defendant's acts, but also (2) that the individual taking those acts was motivated in substantial part by a desire to punish an individual for exercise of a constitutional right,"  *King v. Zamiara*, 680 F.3d 686 (6th Cir. 2012) (internal citations and quotations omitted).

10

### 1. Termination of Employment (Count One)

First, Plaintiff asserts a retaliatory discharge claim against the State, TDOC, TRICOR, Tony Parker, Lisa Helton, Shawn Phillips, Brett Cobble, and Allan Lewis [Doc. 9 ¶ 82]. Plaintiff alleges that Defendant Lewis fired Plaintiff from his position as a wood scraper with TRICOR "in retaliation for, and in a misguided attempt to, manipulate and moot Plaintiff's standing" in his wage-deduction lawsuit and because of Defendant Lewis' personal relationship with Melissa Campbell, a defendant in that suit [*See* Doc. 9 ¶ 26].

It is well established that prisoners have a constitutional right to access the courts. *See, e.g., Lewis v. Casey*, 518 U.S. 343, 346 (1996). Therefore, as alleged, Plaintiff engaged in a protected activity by filing an amended complaint in his wage-deduction lawsuit. *See Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (recognizing claim where the inmate alleged that prison officials "impermissibly retaliated against him for exercising his First Amendment right to file grievances and petition the court for redress"). And the loss of a job generally constitutes an adverse action. *See Walton v. Gray*, 695 F. App'x 144, 146 (6th Cir. 2017) (noting that "[t]his court has indicated that loss of a prison job can constitute an adverse action for retaliation purposes") (citations omitted). Further, Plaintiff notes that he was discharged just one (1) day after filing an amended complaint in his wage-deduction lawsuit [*See id.*]. The temporal proximity of Plaintiff's filing an amended complaint and Defendant Lewis's discharge of Plaintiff from his TRICOR position is sufficient evidence of a causal connection between the two elements to state a plausible retaliation claim against Defendant Lewis. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is

significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation.").

However, Plaintiff's factual allegations only establish that Defendant Lewis made the decision to terminate him. Therefore, all other named Defendants are entitled to dismissal as to Count One. *See Shehee v. Luttrell*, 199 F.3d 295, 301-02 (6th Cir. 1999) (holding that despite prisoner's allegation that prison employees instigated the loss of his commissary position, the prison employees cannot be liable because they were not involved in the decision to terminate the plaintiff). Accordingly, Plaintiff may proceed with Count One against Defendant Lewis, but the Court **DISMISSES** Count One as to the State of Tennessee, TDOC, TRICOR, Defendant Parker, Defendant Helton, Defendant Phillips, and Defendant Cobble.

### 2. Entry of a Contact Note in Plaintiff's TOMIS Profile (Count Two)

Second, Plaintiff claims that Defendants TDOC, TRICOR, Parker, Helton, Phillips, and Lewis placed a false Contact Note in Plaintiff's TOMIS profile on December 28, 2021—the same day that Plaintiff presented evidence at a grievance board hearing concerning his allegedly retaliatory firing by Defendant Lewis [*Id*. ¶¶ 32-34]—in retaliation for Plaintiff's exercise of his First Amendment rights, thereby barring Plaintiff's return to TRICOR and creating false governmental records [*See* Doc. 9 ¶ 83].

Plaintiff engaged in protected conduct when he availed himself of the grievance process. *See Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (noting inmate's "undisputed First Amendment right to file grievances against prison officials on his own behalf" (quoting *Herron*, 203 F.3d at 415)). And a jury could conclude that the entry of an allegedly false Contact Note prohibiting future employment was a sufficiently adverse action that would deter prisoners from filing grievances. *See, e.g., Brown v. Crowley*, 312 F.3d 782, 789 (6th Cir. 2002) (finding issuance

of major misconduct charge subjected inmate to sanctions that a reasonable jury could conclude would deter a person of ordinary firmness from continuing to engage in the protected conduct). Further, the temporal proximity between the entry of the Contact Note and Plaintiff's grievance regarding the TRICOR position is sufficient evidence of a causal connection to state a plausible retaliation claim against Defendant Lewis for entry of the allegedly false Contact Note. *See Mickey*, 516 F.3d at 525. Accordingly, Plaintiff has adequately pled a retaliation claim for the entry of the Contact Note against Defendant Lewis.

However, as with the prior count, Plaintiff's factual allegations implicate only Defendant Lewis. Therefore, the Court **DISMISSES** this Count as it relates to Defendants TDOC, TRICOR, Parker, Helton, and Phillips. *Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim).

### 3. Transfer to HCCF (Count Three)

Third, Plaintiff asserts that Tennessee, TRICOR, TDOC, Parker, Helton, Phillips, Cobble, Lewis, Mooneyham, Brown, and Koczwara transferred Plaintiff to HCCF in retaliation for Plaintiff's exercise of his First Amendment rights to free speech and access to the courts [Doc. 9 ¶ 84]. Plaintiff claims that because of the allegedly retaliatory transfer, he lost his reentry clerk job, property, and various recreational privileges, and that he is now subjected to the constant threat of violence in an institution "overwhelmed by gangs" [*Id.* ¶¶ 76, 79, 81].

As noted above, Plaintiff engaged in protected conduct by filing grievances. *Maben*, 887 F.3d at 265 (citation omitted). And Plaintiff's allegations of injury are sufficient to plausibly establish that an adverse action was taken against Plaintiff. *See, e.g., Siggers-El*, 412 F.3d at 701-02 (6th Cir. 2005) (holding transfer adverse because plaintiff would have more difficulty

meeting with attorney and lost high wages that he could use to pay attorney); *Hill*, 630 F.3d at 475 (transfer to more restrictive environment with fewer privileges constituted adverse action).

Further, Plaintiff has plausibly alleged that his transfer was motivated by his protected conduct. *Thaddeus-X*, 175 F.3d at 394. Plaintiff first heard that he was to be reclassified on May 5, 2022, three weeks after a Scheduling Order was entered in his then-pending wage-deduction lawsuit [Doc. 9 ¶¶ 41-42]. However, Plaintiff's wage-deduction lawsuit had been pending for over a year by that time [*See generally* Case No. 3:21-cv-123]. *See* Fed. R. Evid. 201(b)(2). The entry of a routine Scheduling Order would ordinarily be too attenuated a circumstance to suggest that Plaintiff's transfer was prompted by a retaliatory motive. But Plaintiff also alleges that an unnamed BCCX staff member informed Plaintiff that Plaintiff was being transferred in hopes that he would be harmed at HCCF and to delay or derail his then-pending lawsuit [Doc. 9 ¶ 74]. Accepting these allegations as true, Plaintiff has stated a plausible retaliation claim concerning his transfer to HCCF. *See Twombly*, 550 U.S. at 570

Plaintiff alleges that Defendant Cobble initiated the retaliatory transfer, and that the transfer was facilitated by a fully briefed reclassification hearing panel consisting of Defendants Mooneyham, Brown, and Koczwara [Doc. 9 ¶ 52]. Therefore, Plaintiff's retaliatory transfer claim may proceed against Defendants Cobble, Mooneyham, Brown, and Koczwara. *See King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) (holding officer may be liable for natural consequences of his actions even if ultimate harm is executed by another). But the Court **DISMISSES** this count against all other Defendants because Plaintiff has not pled sufficient factual allegations against them. *See Iqbal*, 556 U.S. at 676; *see also Frazier*, 41 F. App'x at 764.

### 4. Removal from BCCX General Population (Count Six)

In the claim designated "Claim Six" in the Amended Complaint, Plaintiff asserts:

14

> Defendants, through the commission of the unconstitutional acts complained of herein, which were committed with intent to violate the Constitutions of the United States and STATE OF TENNESSEE, have caused Plaintiff physical suffering from inflammation of his arthritis in his right thumb which occurred when Defendants removed Plaintiff from general population and the legal tools necessary to implement his protected First Amendment rights of Freedom of Speech, Redress of Grievances and Access to the Court and mental suffering and anguish from Plaintiff worrying about the prejudice such retaliation causes to his successful litigatory outcomes and the failure of the lawsuit that triggered this retaliation as a result of having to additionally defend himself against such retaliatory acts.

[Doc. 9 ¶ 87].  Assuming that removal from the general population constitutes an adverse action, Plaintiff fails to state sufficient facts to allow the Court to plausibly infer that his removal from general population was motivated by a retaliatory purpose.  Instead, Plaintiff was placed in "quarantine" after he refused a COVID-19 test required by prison regulations [*Id.* ¶ 58].  Additionally, Plaintiff does not assert that any particular Defendant was responsible for placing him in "the hole" [*Id.*].  Therefore, Plaintiff failed to state a claim against any named Defendant. *See Iqbal*, 556 U.S. at 676 (holding that "plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

Additionally, to the extent Plaintiff intends to assert an access-to-courts claim, any such claim fails.  According to Plaintiff, Randall Lewis was responsible for the lack of legal services to "the hole," and Lewis is not a named Defendant in this action [Doc. 9 ¶¶ 67, 73].  Moreover, Plaintiff does not allege that he was unable to pursue a claim or avenue of relief due to the lack of access to legal materials.  *See Lewis v. Casey*, 518 U.S. 343, 354 (1996) (holding that inmate claiming lack of access must demonstrate his prison officials impeded non-frivolous civil rights or criminal action); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("An inmate who claims his access to the courts was denied fails to state a claim without any showing of prejudice to his litigation.").  In fact, Plaintiff did make filings in his wage-deduction case during his period of

quarantine [*See* Case Number 3:21-cv-123, Docs. 44, 45, 46].    Accordingly, the Court **DISMISSES** Count Six.

### B.  Due Process Claims (Counts One, Two, and Three)

To state a cognizable due process claim, Plaintiff must demonstrate that his interests are protected by the Due Process Clause.  *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish one of these interests at stake.").  To establish such an interest, Plaintiff must show that being deprived of that right imposes on him an "atypical and significant hardship" relative to the ordinary circumstances of prison life.  *See Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Here, Plaintiff complains that his rights under the Due Process Clause were violated under 42 U.S.C. §1983 when (1) he was fired from his TRICOR position, [Doc. 9 ¶ 82]; (2) a false Contact Note was placed in his record, [*Id*. ¶ 83]; and (3) he was transferred to HCCF, [*Id*. ¶ 84].[12]

### 1.  Termination of Employment (Count One)

Plaintiff fails to assert a viable due process claim with regard to the loss of his TRICOR position, because prisoners have no general constitutional right to employment, wages, or sentence reduction credits.  *See Hansard v. Barrett*, 980 F.2d 1059, 1062 (6th Cir. 1992) (finding no constitutional right to earn or receive sentence credits); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (holding inmate has no due process right to wages for work performed); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) ("Prisoners have no constitutional right to

---

[12] To the extent Plaintiff claims that any of these events violated either TDOC or TRICOR policy, failure to follow institutional policies does not amount to a constitutional violation.  There is no constitutional right or protectable liberty interest in a policy directive.  *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007) (holding failure to follow policy directive does not rise to level of a constitutional violation because policy directive does not create a constitutional right or protectable liberty interest).

16

rehabilitation, education, or jobs."). Accordingly, Plaintiff fails to state a claim for relief under the due process clause for the loss of his TRICOR position.

### 2. Entry of a Contact Note in Plaintiff's TOMIS Profile (Count Two)

Further, as to Plaintiff's claim that a false Contact Note was entered into his TOMIS profile, the Court cannot discern what effect the Contact Note has on Plaintiff, other than job restriction. And Plaintiff has no right to employment. Nor does an inmate have a Constitutional right to be free from false disciplinary charges. *See Person v. Campbell*, No. 98-5638, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) ("[T]he filing of false disciplinary charges against an inmate does not constitute a constitutional violation redressable under § 1983."). The same holds true for a less punitive Contact Note. Accordingly, Plaintiff fails to state a viable due process claim with respect to the entry of a Contact Note in his TOMIS profile.

### 3. Transfer to HCCF (Count Three)

Finally, as to Plaintiff's transfer to HCCF, Plaintiff has no due process right to be protected against transfer itself. *See, e.g., Meachum v. Fano*, 427 U.S. 215, 228 (1976) (holding officials may transfer a prisoner "for whatever reason or for no reason at all"). Plaintiff also complains that as a result of the transfer, he lost a high-paying job, sentence reduction credits, two craft lockers in the BCCX Hobby Shop and their contents, daily free access to the entire BCCX Site-2 compound, and outdoor recreation three (3) times daily [Doc. 9 ¶ 79]. But none of the losses Plaintiff suffered as a result of his transfer implicate a Constitutional right. Plaintiff has no protected liberty interest in his housing, *Montanye v. Haymes*, 427 U.S. 236, 42 (1976); rehabilitation, education, or employment, *Argue*, 80 F. App'x 427 at 429; unlimited or specific amounts of recreation, *Hatfield v. Daviess Cnty. Det. Ctr.*, No. 4:17-CV-P12, 2017 WL 1731713,

at *3 (W.D. Ky. May 2, 2017) (collecting cases); or sentence reduction credits, *Hansard*, 980 F.2d at 1062.

Plaintiff has likewise failed to allege a due process claim as to the loss of his personal property. Due process principles are not automatically violated when a State employee deprives an individual of property, provided that the State makes a post-deprivation remedy available. *Parratt v. Taylor*, 451 U.S. 527, 543 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (extending *Parratt*'s holding to intentional deprivations of property). Plaintiff has not pled that Tennessee's post-deprivation procedures are inadequate for redressing the alleged wrong as is necessary to sustain his Section 1983 claim. *See Vicory v. Walton*, 721 F.2d 1062, 1063 (6th Cir. 1983) (holding plaintiff bears burden of pleading and proving absence of state remedies). Therefore, Plaintiff has not stated a due process claim for the loss of his personal property attendant to his transfer. Accordingly, the Court **DISMISSES** all of Plaintiff's due process claims.

## C. Equal Protection Claims (Counts One, Two, and Three)

The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state a viable equal protection claim, "a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)). "Under rational basis review, a plaintiff faces a severe burden and must negate all possible rational justifications for the distinction" in treatment. *See Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 770 (6th Cir. 2005) (citations and quotations omitted).

18

Here, Plaintiff maintains that his equal protection rights under Section 1983 were violated when (1) he was fired from his TRICOR position [Doc. 9 ¶ 82], (2) a false Contact Note was placed in his TOMIS file [*Id*. ¶ 83], and (3) he was transferred to another facility [*Id*. ¶ 84]. As noted above, Plaintiff has no protected right to employment, *Argue*, 80 F. App'x at 429, to avoid a false disciplinary charge, *Pearson*, 1999 WL 454819, at *1, or to avoid a prison transfer, *Meachum*, 427 U.S. at 228. Additionally, Plaintiff has not identified himself as a member of a particular suspect class, and prisoners are not a suspect class. *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997).

With respect to the loss of his TRICOR position, Plaintiff contends that he qualifies as a "Class of One" [Doc. 9 ¶ 31]. Generally, a plaintiff may establish an equal protection claim under a "class of one" theory by demonstrating that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. Of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiff must also show that the adverse treatment he experienced was so unrelated to the achievement of legitimate purposes that the only conclusion is that the government's actions were irrational. *See Warren v. City of Athens, Ohio*, 411 F.3d 697, 710-11 (6th Cir. 2005). This showing is made by (1) negating every conceivable reason supporting the government's actions, or (2) demonstrating that the actions were motivated by animus or ill-will. *Id*. at 711.

It is unclear whether Plaintiff may assert a "class of one" theory in a prison setting involving discretionary decision-making by prison officials. *See Dawson v. Norwood*, No. 1:06-CV-914, 2010 WL 2232355, at *2 (W.D. Mich. June 1, 2010) ("District courts have consistently rejected class-of-one theories in the context of prison officials making discretionary decisions concerning inmates." (collecting cases)). Nonetheless, even if Plaintiff may legally assert a "class of one" claim as to these allegations, Plaintiff has not included facts demonstrating disparate

19

treatment of similarly situated individuals or that there is no rational basis for the alleged difference in treatment. Additionally, Plaintiff has not negated all rational justifications that might support Defendants' decisions or demonstrated that the challenged actions were motivated by animus or ill will. Finally, Plaintiff's "class of one" equal protection claims merely reword his retaliation claims. *See Vukadinovich v. Bartels*, 853 F.2d 1387, 1391-92 (7th Cir. 1988) (dismissing equal protection claim that constituted "mere rewording of plaintiff's First Amendment retaliation claim"). Accordingly, the Court **DISMISSES** Plaintiff's equal protection claims.

### D. Civil Conspiracy Claims (Counts Four and Five)

Plaintiff claims that Defendants conspired to retaliate against him in violation of State and Federal constitutional law and TDOC policy because Plaintiff exercised his First Amendment rights [Doc. 9 ¶ 85]. He asserts that Defendants "have committed and continue to commit specific overt acts in the furtherance of their conspiracy to cause injuries to Plaintiff" [*Id.*]. He also maintains that Defendants have the power to prevent the violations he has suffered yet "wrongfully neglected or refused to do so" [*Id.* ¶ 86].

#### 1. Conspiracy Under 42 U.S.C. § 1985 (Count Four)

To state a claim for civil conspiracy under 42 U.S.C. § 1985, a Plaintiff must show (1) a conspiracy of two or more persons; (2) a racial or other class-based, invidiously discriminatory animus behind the conspirators' actions; (3) an act in furtherance of the conspiracy; and (4) consequential injury to a person or property or deprivation of a right or privilege of a citizen of the United States. *See Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971). Here, Plaintiff fails to plead any facts from which the Court could plausibly infer that Defendants intentionally discriminated against him based on some racial or class-based animus. *See Dallas v. Holmes*, 137 F. App'x 746, 752 (6th Cir. 2005) ("Conspiracy claims under § 1985(3) must be pleaded with the

same specificity as conspiracy claims under § 1983.") (citation omitted). Because Plaintiff "cites no authority establishing he belongs to a recognizable class for purposes of a § 1985 conspiracy claim[,]" his claim, as plead, is "patently frivolous." *See Bruggeman v. Paxton*, 15 F. App'x 202, 205, 2001 WL 861678, *2 (6th Cir. June 2001). Additionally, to the extent Plaintiff attempts to argue that he is a "class of one," [Doc. 9 ¶ 31] a class-of-one equal protection claim cannot form the basis of a Section 1985 civil conspiracy claim. *See Royal Oak Entm't, LLC v. City of Royal Oak*, 205 F. App'x 389, 399 (6th Cir. 2006) (citing *McGhee Schoolcraft Cmty. Coll.*, 167 F. App'x 429, 436 (6th Cir. 2006)). Accordingly, the Court **DISMISSES** Count Four.

## 2. Conspiracy Under 42 U.S.C. § 1986 (Count Five)

Plaintiff also purports to raise a claim under 42 U.S.C. § 1986 [Doc. 9 ¶ 86]. But 42 U.S.C. § 1986 "provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates." *Great American Federal Savings & Loan Assoc. v. Novotny*, 442 U.S. 366, 273 (1979). A plaintiff who has alleged a colorable claim of conspiracy under Section 1985 may seek damages for that violation under Section 1986. *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984). But, where, as here, there is no valid Section 1985 claim, Plaintiff's Section 1986 claim fails as a matter of law. *See Ellison v. Leffler*, 30 F.3d 133, 1994 WL 276926, at *2 (6th Cir. June 21, 1994) (finding that absent a valid Section 1985 claim, a "§ 1986 claim fails by definition"). Therefore, the Court **DISMISSES** Count Five.

## 3. Conspiracy Under 42 U.S.C. § 1983

Out of an abundance of caution, the Court also considers whether Plaintiff's allegations are sufficient to state a claim for conspiracy under 42 U.S.C. § 1983. To do so, Plaintiff must allege (1) the existence of a single plan, (2) a conspiratorial objective shared by the conspirators to deprive Plaintiff of his constitutional rights, (3) and the commission of an overt act. *Revis v.*

*Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007). The conspiracy must be pled with particularity—vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 564-65 (noting that allegations must be supported with factual allegations that render the claim "plausible"); *Gutierrez v. Lunch*, 826 F.2d 1534, 1538 (6th Cir. 1987) ("It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.").

Here, Plaintiff maintains that the fact that he was transferred to HCCF and not reclassified to general population at BCCX, combined with Defendants' failure to acknowledge Plaintiff's security concerns and Defendant Mooneyham's statement that any reclassification he performed would be "to HCCF again," is evidence of a conspiracy [Doc. 9 ¶ 71]. However, Plaintiff has not presented any specific factual allegations suggesting an agreement between two or more individuals to retaliate against Plaintiff for exercising his First Amendment rights. Instead, Plaintiff presents legal conclusions without the requisite factual specificity required to sustain a civil conspiracy claim. *See Huffer v. Bogan*, 503 F. App'x 455, 462 (6th Cir. 2012) (holding that the plaintiff failed to state a conspiracy claim where he "merely described the actions taken by various individual defendants, asserting that their actions were taken in furtherance of a conspiracy," and failed "to include allegations regarding an agreement or shared plan between the individual defendants to violate his civil rights"). Accordingly, Plaintiff fails to state a conspiracy claim under Section 1983.

### E. Claims of State Law and TDOC Policy Violations

At various points throughout his Amended Complaint, Plaintiff contends that Defendants acted or failed to act in compliance with Tennessee statutes and TDOC policies [Doc. 9 ¶¶ 24, 33,

55, 64, 82, 83, 84, 85]. However, claims under Section 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for general violations of state law or policy. *Laney,* 501 F.3d at 581 n.2 (6th Cir. 2007); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (holding that failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Accordingly, without more, Plaintiff's claims that Defendants failed to carry out their statutory duties and duties under TDOC policy fail to state a claim upon which relief may be granted under Section 1983.

Further, Plaintiff alleges violations of Tenn. Code Ann. §§ 39-16-402, 39-16-403, and 41-1-103 [Doc. 9 ¶¶ 82-84]. However, these statutes do not provide for a private right of action under Tennessee law. *See Slowik v. Lambert*, 529 F. Supp. 3d 756, 765-66 (E.D. Tenn. 2021) (holding Tenn. Code Ann. § 39-16-402 is a criminal statute that does not provide a private right of action (citing cases)); *Dirks v. Tudors*, No. E2008-01384-COA-R3-CV, 2009 WL 1372180, at *2 (Tenn. Ct. App. May 18, 2009) (concluding that Tennessee Code Annotated § 39-16-403 does not contain a private right of action); *Pendleton v. Mills*, 73 S.W.3d 115, 123 (Tenn. Ct. App. 2001) ("While violations of oaths of office such as the one Corporal Mills took are punishable as perjury, Tenn. Code Ann. § 41-3-103(c), they do not provide a basis for civil actions under state law." (citing *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 231 (Tenn. Ct. App. 2000) (declining to recognize a civil action for perjury))). Nor does Tennessee law recognize a general private cause of action for violation of the Tennessee Constitution. *Tong v. Daley*, No. 2:21-CV-02784-JPM-CGC, 2022 WL 6874032, at *4 (W.D. Tenn. May 20, 2022), *report and recommendation adopted*

*sub nom. Tong v. Daly*, No. 2:21-CV-02784-JPM-CGC, 2022 WL 4235066 (W.D. Tenn. Sept. 14, 2022) (citing cases).  Accordingly, the Court **DISMISSES** Plaintiff's state law and policy claims.

### F.  Claims Related to Grievance Procedure

Plaintiff does not explicitly raise a Section 1983 claim related to TDOC grievance procedure, but he does maintain that Defendants Helton and Parker delegated their resolution of Level III grievances to Lee Dotson, and that they bear liability for failing to properly supervise Dotson [Doc. 9 ¶ 24].  Inmates have no constitutional right to a grievance procedure, and they therefore have no accompanying right to have that procedure properly carried out.  *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)); *Kendrick v. Erdos*, No. 1:21-CV-00266, 2022 WL 4480132, at *2 (S.D. Ohio Sept. 27, 2022) ("And, it is well-settled that a prisoner has neither a federal constitutional right to an effective grievance procedure nor a due process interest in having his grievances resolved or investigated to his satisfaction." (citing *Clement v. Macomb Corr. Facility*, No. 2:22-CV-10853, 2022 WL 2292720, at *2 (E.D. Mich. June 24, 2022) (collecting cases))).

Further, Defendants Helton and Parker may not bear any constitutional liability based solely on their alleged failure to supervise Dotson because "liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon a mere failure to act."  *See Shehee*, 199 F.3d at 300  (citation and internal quotation marks omitted); *see also Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) (explaining that "[s]upervisory liability under Section 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior'" (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999))).    Accordingly,

Plaintiff fails to state a Section 1983 claim regarding the resolution of his grievances and/or the grievance process.

### G. Other Federal Statutes

Plaintiff also alleges that Defendants' conduct violates portions of the Fair Labor Standards Act, Whistleblower Protection Act, Civil Rights of Institutionalized Persons Act, and Taxpayer First Act [Doc. 9 ¶¶ 82-84]. The Court addresses each in turn.

#### 1. Fair Labor Standards Act—29 U.S.C. §§ 215(a)(3) and 218(a)(2)-(5)

Plaintiff alleges that Defendants' allegedly retaliatory actions violate the Fair Labor Standards Act ("FLSA") prohibition against retaliation. But the FLSA applies only to employees. *See Gilbo v. Agment, LLC*, 831 F. App'x 772, 775 (6th Cir. 2020). And "inmates who work in prison are not employees of the prison." *See Chambers v. Adams*, 230 F.3d 1357, *1 (6th Cir. 2000) (citing *Abdullah v. Myers*, 52 F.3d 324, 1995 WL 222187 (6th Cir. Apr. 13, 1995)). Accordingly, the FLSA is inapplicable to Plaintiff and the Court **DISMISSES** his FLSA claim.

#### 2. Whistleblower Protection Act—15 U.S.C. § 2087

Plaintiff next maintains that the allegedly retaliatory actions taken against him violate the Whistleblower Protection Act ("WPA"), 15 U.S.C. § 2087(a). But as with the FLSA, the WPA protects only employees, and Plaintiff was not an "employee" under the law. *See* 15 U.S.C. § 2087; *Miller v. Stewart*, No. 15-14164, 2019 WL 2208466, *6 (E.D. Mich. Mar. 1, 2019) (noting that work performed by prisoners is not typically protected by federal statutes (collecting cases)). Accordingly, the Court **DISMISSES** Plaintiff's claims under the WPA.

#### 3. Civil Rights of Institutionalized Persons Act—42 U.S.C. §§ 1997d, 1997e

Plaintiff further alleges that Defendants' actions violated 42 U.S.C. §§ 1997d and 1997e [Doc. 9 ¶¶ 82-84]. While Section 1997d prohibits retaliation against persons who report certain

25

conditions, it does not create a private right of action. *Martin v. Upchurch*, No. 93-16907, 1995 WL 563744, at *3 n.3 (10th Cir. Sept. 22, 1995) ("[T]here is no private right of action under 42 U.S.C. § 1997." (citing *Price v. Brittain*, 874 F.2d 252, 264 (5th Cir. 1989))). Nor does Section 1997e authorize a private right of action. *See, e.g., Douglas v. Greenup Cnty., Ky.*, No. 0:19-114-DCR, 2019 WL 6794185, at *2 (E.D. Ky. Dec. 12, 2019). Therefore, Plaintiff cannot maintain a claim under these statutes, and the Court **DISMISSES** Plaintiff's claims.

### 4. Taxpayer First Act—26 U.S.C. § 7623

Plaintiff also alleges that his allegedly retaliatory firing from his TRICOR job violated the Taxpayer First Act. That Act provides protection against retaliation to employee whistleblowers who provide information concerning tax fraud to the Internal Revenue Services. 26 U.S.C. § 7623(d). However, as noted above, Plaintiff is not considered an employee of the prison. And Plaintiff does not otherwise fall within the protections of the Act. Accordingly, the Court **DISMISSES** this claim.

### H. Defendants' Capacity

Now that the Court has properly screened Plaintiff's legal claims, the Court addresses which Defendants remain in this case, and in what capacity. Plaintiff purports to sue the State of Tennessee, the TDOC, and TRICOR in their "official and public capacities" [Doc. 9 ¶¶ 5-7]. And Plaintiff sues the individually named Defendants in their official capacities, their individual capacities, and as "natural persons" [*Id.* ¶¶ 8-16].

### 1. The State Defendants (State of Tennessee, TDOC, and TRICOR)— Official Capacity Claims

The State of Tennessee is not amenable to suit, because a "State is not a person within the meaning of § 1983." *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). And because TDOC and TRICOR are State agencies, they are likewise precluded from suit. *See Hix v. Tenn.*

26

*Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (holding TDOC is equivalent of the "State" and not a "person" within the meaning of Section 1983); *Smiley v. Tennessee*, No. 1:16-CV-469-HSM-SKL, 2017 WL 3975001, at *5 (E.D. Tenn. Sept. 8, 2017) ("TRICOR is a state agency."). Accordingly, Plaintiff cannot maintain suit against Tennessee, TDOC, or TRICOR, and the Court **DISMISSES** them from this action in their entirety.

### 2. Defendants Lewis, Cobble, Mooneyham, Brown, and Koczwara— Official Capacity Claims

Plaintiff sued Defendants Tony Parker, Lisa Helton, Shawn Phillips, Brett Cobble, Allan Lewis, Brian Cox, Tim Mooneyham, Melissa Campbell, Jessica Brown, and Zack Koczwara (the "Individual Defendants") in their official capacities as employees of TDOC. But the only claims surviving in this action are Plaintiff's claims of retaliatory discharge, retaliation related to the Contact Note placed in his TOMIS file, and retaliatory transfer. And these claims are only sufficiently pled against Defendants Lewis, Cobble, Mooneyham, Brown, and Koczwara. Accordingly, the Court considers only these Defendants' capacity for suit, in addition to any potentially necessary parties.

Filing suit against Defendants Lewis, Cobble, Mooneyham, Brown, and Koczwara in their official capacities seeking monetary damages is treated as an action against the State of Tennessee because Plaintiff "seeks damages not from the individual officer, but from the entity from which the officer is an agent." *See Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). And because Plaintiff cannot maintain suit against the State of Tennessee or its agencies, it likewise cannot maintain suit

27

against State personnel in their official capacities. *See WCI, Inc. v. Ohio Dep't of Pub. Safety*, 18 F.4th 509, 513-14 (6th Cir. 2021) (holding state officials sued in official capacity immune from suit under doctrine of sovereign immunity absent consent); *Berndt v. State of Tennessee,* 796 F.2d 879, 881 (6th Cir. 1986) (noting that Tennessee has not waived immunity to suit under Section 1983). Accordingly, Plaintiff cannot obtain monetary damages against Defendants Lewis, Cobble, Mooneyham, Brown, and Koczwara.

But Plaintiff may be able to obtain injunctive relief against Defendants Lewis, Cobble, Mooneyham, Brown, and Koczwara in their official capacities. "[A] [S]tate official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n. 10 (quoting *Graham*, 473 U.S. at 167 n. 14).

> [I]ndividuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties . . . an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action.

*Ex Parte Young*, 209 U.S. 123, 155-56 (1908). To avoid the bar of sovereign immunity, "an action against a state official must be 'based on a theory that the officer acted beyond the scope of his statutory authority or, if within that authority, that such authority is unconstitutional.'" *Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 459 n. 9 (6th Cir. 1982) (quoting *Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 689-90, (1982)). Therefore, the state official must have some connection with the enforcement of the allegedly unconstitutional action in order to be a proper defendant. *See Allied Artists Picture Corp. v. Rhodes*, 679 F.2d 656, 665 n. 5 (6th Cir. 1982) (citing *Ex Parte Young*, 209 U.S. at 157).

28

Here, Plaintiff has plausibly alleged that Defendants Lewis, Cobble, Mooneyham, Brown, and Koczwara took or enforced an allegedly unconstitutional action. Therefore, Plaintiff may seek injunctive relief against Defendants Lewis, Cobble, Mooneyham, Brown, and Koczwara in their official capacities. But the Court **DISMISSES** Plaintiff's claims against Defendants Parker, Campbell, and Cox for failure to state a claim upon which relief can be granted.

### 3. Defendants Helton and Phillips—Official Capacity Claims

Plaintiff has not alleged that TDOC Commissioner Lisa Helton had any knowledge of, or involvement in, any allegedly retaliatory conduct [*See* Doc. 9]. And Defendant Warden Phillips's involvement is limited to the fact that he responded to Plaintiff's grievance regarding the intended transfer [*Id.* ¶ 43]. These allegations are insufficient to state a claim against either Defendant Helton or Defendant Warden Phillips in his or her official capacity.

However, Defendants Commissioner Helton and Warden Phillips may be necessary parties to enforce any prospective injunctive relief to which Plaintiff may be entitled. *See* Fed. R. Civ. P. 19(a)(1)(A) (providing "person who is subject to service of process and whose joinder will not provide the court of subject-matter jurisdiction must be joined as a party if[,] in that person's absence, the court cannot accord complete relief among existing parties"). Defendant Phillips, as BCCX Warden, presumably oversees prisoner placement and transfers within that facility. *See* Tenn. Code Ann § 41-1-104(b) ("The custody, welfare, conduct and safekeeping of the inmates shall be the responsibility of the warden, who will examine into the affairs of the institution daily to assure that proper standards are maintained."). But Warden Phillips seemingly has no authority to order the HCCF Warden to reclassify Plaintiff to BCCX, even if Plaintiff is successful in this suit. Therefore, Commissioner Lisa Helton is likely a necessary party to ensure that a reclassification occurs if one is ultimately appropriate and ordered by the Court. *See, e.g.,* Tenn.

Code Ann. § 4-3-603(a) (providing Commissioner "the immediate charge of the management and government of the institutions of the department"). Accordingly, Defendants Phillips and Helton will remain in this suit in their official capacities solely for the purpose of carrying out any injunctive relief that the Court might ultimately order.

### 4. Individual Capacity Claims

To sustain a claim against a defendant in his or her individual capacity, a "plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. As discussed above, Plaintiff has plausibly alleged retaliation claims against Defendants Cobble, Lewis, Mooneyham, Brown, and Koczwara, and claims against these Defendants in their individual capacities will proceed. But Plaintiff fails to allege facts connecting Defendants Parker, Helton, Phillips, Campbell, or Cox with any constitutional wrongdoing, and the Court **DISMISSES** all claims against these Defendants in their individual capacities.

## IV. CONCLUSION

For the reasons set forth above, it is **ORDERED**:

1. Plaintiff's claim of retaliatory discharge will **PROCEED** against Defendant Lewis, in his official and individual capacities;

2. Plaintiff's claim of retaliation by entry of a false Contact Note will **PROCEED** against Defendant Lewis, in his official and individual capacities;

3. Plaintiff's claim of retaliation by way of a prison transfer will **PROCEED** against Defendants Cobble, Mooneyham, Brown, and Koczwara, in their official and individual capacities;

4. Defendants Phillips and Helton will remain in this action, in their official capacities, solely for the purpose of executing any prospective injunctive relief that the Court may order;

5. The Court **DIRECTS** the Clerk to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants Lewis, Cobble, Mooneyham, Brown, Koczwara, Phillips, and Helton;

6. Plaintiff **MUST** complete the service packets and return them to the Clerk's Office within twenty-one (21) days of entry of this Memorandum and Order. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service pursuant to Fed. R. Civ. P. 4;

7. Failure to return the completed service packets within the time required will result in dismissal of this action for want of prosecution and/or failure to follow Court orders;

8. Defendants shall answer or otherwise respond to the Amended Complaint within twenty-one (21) days from the date of service. If any Defendant fails to timely respond to the Amended Complaint, any such failure may result in entry of judgment by default against that Defendant;

9. The Court **DISMISSES** all remaining claims and Defendants; and

10. The Court **ORDERS** Plaintiff to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**SO ORDERED.**

**ENTER:**

  s/ Katherine A. Crytzer
KATHERINE A. CRYTZER
United States District Judge