UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| CHRISTOPHER STEPHEN JONES, | ) |
| Plaintiff, | ) |
| v. | ) No.: 3:23-CV-9-KAC-DCP |
| FRANK STRADA, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Now before the Court is a "Partial Motion to Dismiss Plaintiff's Complaint" filed by Defendants Lewis, Cobble, Mooneyham, Brown, Koczwara, Phillips, and Strada [Doc. 56]. In that Motion, the Moving Defendants ask the Court to dismiss Plaintiff's claim that Defendant Allan Lewis entered a false Contact Note in Plaintiff's Tennessee Offender Management Information System ("TOMIS") file in retaliation for Plaintiff's protected conduct, based on a failure to exhaust administrative remedies [*See* Doc. 56]. Plaintiff opposed [Doc. 60]. For the reasons below the Court **GRANTS** the Moving Defendants' Motion and **DISMISSES** Plaintiff's retaliation claim based on the allegedly false Contact Note.

### I. RELEVANT BACKGROUND

At all times relevant to this litigation, Plaintiff was an inmate in the custody of the Tennessee Department of Correction ("TDOC") housed at the Bledsoe County Correctional Complex ("BCCX") [Doc. 9 ¶ 4]. At BCCX, Plaintiff was employed as a wood scraper in the Tennessee Rehabilitative Initiative in Correction ("TRICOR") program [*Id.* ¶ 20]. On December 20, 2021, Plaintiff filed a wage-deduction lawsuit against various Defendants involving his TRICOR job [*Id.* ¶ 25]. The next day, Defendant Lewis, Plaintiff's TRICOR supervisor, fired

Plaintiff [*Id.* ¶ 26]. Plaintiff filed a grievance alleging the termination was retaliation for filing his wage-deduction lawsuit [*Id.* ¶ 27].

After Plaintiff's grievance hearing concluded on December 28, 2021, Defendant Lewis allegedly "placed a negative and false Contact Note" in Plaintiff's TOMIS profile [*Id.* ¶¶ 33, 34]. The Note stated that Plaintiff quit his job and made "job threating [sic] statements" to a supervisor [*Id.* ¶ 34]. Plaintiff knew about the Note as of January 12, 2022, but he did not file a grievance about the Note because he "had only verbal confirmation of its existence" [*Id.* ¶¶ 34, 38].

Nearly six months later, on May 5, 2021, Plaintiff learned he was being transferred to another facility [*Id.* ¶ 42]. On May 12, 2022, a TDOC official gave Plaintiff a "print-out" of the Note [*Id.* ¶ 34]. Plaintiff did not file a grievance about the Note, allegedly because (1) by the time he received the print-out he "had been denied [a] meaningful opportunity to timely grieve" it, and (2) "the fear from the threat of retaliatory transfer and the many acts of improper processing of, and responses to, Plaintiff grieving and appealing the retaliatory transfer, had intimidated Plaintiff to resign in the fact that the TDOC grievance process [wa]s functionally unavailable" [*Id.*]. TDOC eventually transferred Plaintiff to the Hardeman County Correctional Facility ("HCCF"), where he filed this action [*Id.* ¶ 78].

In his complaint, Plaintiff states that he used the TDOC's grievance procedure to address his transfer and termination claims prior to filing this action [*Id.* ¶¶ 27, 32–34, 43]. Upon screening Plaintiff's complaint, this Court permitted Plaintiff to proceed on allegations that Defendant Lewis retaliated against him by entering the false Note in Plaintiff's TOMIS file [*See* Doc. 10 at 13, 30].

II.    ANALYSIS

Failure to exhaust administrative remedies is an affirmative defense that "inmates are not required to specially plead or demonstrate . . . in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Nonetheless, where it is apparent from the face of the complaint that an inmate has

2

failed to exhaust the relevant prison grievance procedure, a claim may be dismissed. *Id*. at 215-16; *see also Stone v. Tennessee*, No. 3:15-cv-00018, 2015 WL 1275382, at *2 (M.D. Tenn. Mar. 19, 2015) (finding *sua sponte* dismissal is appropriate where failure to exhaust his "apparent from the face of the complaint").

"Rule 12(b)(6) [of the Federal Rules of Civil Procedure] permits a defendant to seek relief on the ground that a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true[.]" *Winnett v. Caterpillar, Inc*., 553 F.3d 1000, 1005 (6th Cir. 2009). To survive a Rule 12(b)(6) motion raising failure to exhaust, the inmate "cannot just sit on his laurels, but must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014). Consideration of extrinsic documents may require a Court to convert a Rule 12(b)(6) motion into a motion for summary judgment in some circumstances, but Courts may consider "the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case[,] and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein" without converting the motion to one for summary judgment. *Clark v. Stone*, 998 F.3d 287, 296-97 (6th Cir. 2021).

The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust "such administrative remedies as are available" before bringing a Section 1983 suit in federal court. 42 U.S.C. § 1997e(a). To meet the exhaustion requirement, an inmate must properly satisfy the grievance procedures set by his correctional institution, including procedural rules and deadlines. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). To properly exhaust his claims, a prisoner must utilize every step of the prison's procedure for resolving his grievance and follow the "critical procedural

rules" in a manner that allows prison officials to review and, where necessary, correct the issues set forth in the grievance "on the merits." *Troche v. Crabtree*, 814 F.3d 795, 798 (6th Cir. 2016) (citation omitted).

Exhaustion is generally mandatory, regardless of the type of relief sought, or whether such relief can be granted through the administrative process. *See Woodford*, 548 U.S. at 85; *see also Ross v. Blake*, 578 U.S. 632, 641 (2016). "[E]xhaustion is required even if the prisoner subjectively believes the remedy is not available, . . . and even where (the prisoners) believe the procedure to be ineffectual or futile . . . ." *See Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (internal citations and citations omitted); *Woodford*, 548 U.S. at 95 (stating that an effective exhaustion requirement must be strict, otherwise "[a] prisoner who does not want to participate in the prison grievance system will have little incentive to comply").

An inmate may be relieved of the administrative exhaustion requirement in limited circumstances where the administrative remedies are effectively unavailable. *See Ross*, 578 U.S. at 643-44. This includes circumstances where (1) there is no possibility for relief through use of the procedure; (2) the rules are so confusing as to render them essentially unknowable; or (3) prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. If an inmate shows an affirmative effort to comply with the administrative procedures, a court will consider whether the facility's alleged actions "would deter a person of ordinary firmness from continuing with the required appeal process." *Himmelreich v. Fed. Bureau of Prisons*, 766 F.3d 576, 577 (6th Cir. 2014) (citation omitted).

4

Case 3:23-cv-00009-KAC-DCP   Document 76   Filed 01/16/25   Page 4 of 7   PageID #: 906

Here, Plaintiff admits that he did not attempt to exhaust the three-step TDOC grievance procedure set forth in TDOC policy 501.01[Doc. 61-1][1] for his claim based on the false Contact Note [*See* Doc. 9 ¶ 34]. But Plaintiff now claims that he is exempt from the exhaustion requirement for that claim because he did not learn of the Note's existence within the seven-day deadline for filing an incident-based grievance [*See* Doc. 60 at 3-4]. Plaintiff argues that because any grievance filed outside of the deadline would have been rejected as inappropriate, utilization of the TDOC grievance procedure would "operate[] as a simple dead end" [*Id.* at 4 (citing *Valentine v. Collier*, 141 S. Ct. 57, 59 (2020))]. Specifically, Plaintiff claims that he "had only verbal confirmation" of the Note's existence until May 12[2], 2022, and, by then, "the threat of retaliatory transfer" and other "improper" responses to his grievances "intimidated Plaintiff to resign in the fact that the TDOC process [was] functionally unavailable" [Doc. 9 ¶ 34].

But Plaintiff cannot circumvent the exhaustion requirement by claiming he believed the procedure was unavailable. *See Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 998 (6th Cir. 2004) (affirming district court's conclusion that prisoner's "subjective belief" that grieving the issue would be futile "hardly excuses [his] failure to exhaust"). And Plaintiff could have filed a written grievance about the Note within seven days of when he received "verbal confirmation" of the allegedly false Note on January 12, 2022 [*See* Docs. 9 ¶ 34, 61-1 at 2]. Similarly, he could have filed a grievance within seven days of when he received a printed copy of the Note on May 12, 2022 [*See* Docs. 9 ¶ 34, 61-1 at 2]. He did not. And the Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate entirely fails to invoke

---

[1] Because Plaintiff repeatedly refers to Policy 501.01 throughout his complaint, and this policy is integral to his claims, the Court may consider the Policy without converting Defendants' motion into one for summary judgment. *See Clark*, 998 F.3d at 296-97.

[2] Plaintiff implies in another portion of his Complaint that he received a printed copy of the Note on May 10, 2022 [Doc. 9 ¶ 51].

5

the prison's grievance procedure." *Napier*, 636 F.3d at 224.  Plaintiff cannot evade the exhaustion requirement by arguing that any grievance regarding the Note would have been untimely by the time he learned of its existence, because even if Plaintiff believed the grievance procedure was "functionally unavailable," the "only way to determine if the process was available, or futile, was to try." *Id*.  Plaintiff admits he did not try to grieve his claim based on the Note.  Thus, his claim is subject to dismissal.

Additionally, because Plaintiff's claim of intimidation did not arise until months after he failed to grieve the Note in January 2022, that argument fails.  And after discovering a later-in-time impending transfer, Plaintiff exhausted the grievance process from the transfer, but not the Note claim [*See* Doc. 9 ¶¶ 34, 43].  Any argument that the threat of retaliatory transfer rendered the grievance process unavailable is undercut by the fact that Plaintiff filed a grievance after the alleged threat.  *See Sango v. Fleury*, No. 21-2597, 2022 WL 2163519, at *2 (6th Cir. May 4, 2022) (finding that the plaintiff's "claim that he was unable to utilize the grievance system is belied by his record of grievances"); *see also Gebhardt v. Larson*, No. 2:20-cv-11742, 2022 WL 4138600, at *8 (E.D. Mich. Aug. 2, 2022).

Moreover, Plaintiff's alleged fear of retaliation did not deter him from (1) refusing to take a COVID-19 test to delay or avoid the transfer; (2) reporting the Note and the transfer to the Office of Investigation and Conduct ("OIC") Tip-Line on two occasions; (3) meeting with an OIC official to discuss the Note; and (4) mailing letters to media outlets and civil rights organization protesting the transfer [Doc. 9 ¶¶ 45, 54, 58, 62].  In light of Plaintiff's own allegations in the Complaint, his assertion of fear of retaliation rings hollow.  *See, e.g., Sango*, 2021 WL 2217372, at *2; *Black v. Fischer*, No. 12-cv-2341, 2013 WL 1314940, *8–9 (S.D.N.Y. Mar. 28, 2013) (holding plaintiff's

6

claim that he was deterred from pursuing grievances due to threats was overcome by the fact that the plaintiff filed other grievances and complaints during the relevant time period).

IV. **CONCLUSION**

For the reasons set forth above, the Court **GRANTS** the Moving Defendants' motion [Doc. 56] and **DISMISSES** Plaintiff's retaliation claim based on the allegedly false Contact Note without prejudice.

SO ORDERED.

ENTER:

s/ Katherine A. Crytzer
KATHERINE A. CRYTZER
United States District Judge