UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| CHRISTOPHER STEPHEN JONES, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.: 3:23-CV-9-KAC-DCP |
| FRANK STRADA, SHAWN PHILLIPS, BRETT COBBLE, ALLAN LEWIS, TIM MOONEYHAM, JESSICA BROWN, and ZACK KOCZWARA, | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Before the Court are (1) the motion for summary judgment filed by pro se Plaintiff Christopher Stephen Jones [Doc. 94]; (2) the motion for summary judgment filed by Allan Lewis, Brett Cobble, Tim Mooneyham, Jessica Brown, Zack Koczwara, Shawn Phillips, Lisa Helton[1], and Frank Strada[2] [Doc. 96]; and (3) Plaintiff's "Motion to Deny Defendants' Motion for Summary Judgment" [Doc. 103]. For the below reasons, the Court denies Plaintiff's motions [Docs. 94, 103] and grants the remaining Defendants' motion for summary judgment [Doc. 96].

**I.     BACKGROUND**

Plaintiff is serving a life sentence [Doc. 101 ¶ 13, 41]. From the beginning of his sentence in 2015 until June 2022, Plaintiff was housed in the Bledsoe County Correctional Complex

---

[1] The Court previously substituted Defendant Frank Strada for Lisa Helton [Doc. 36 at 9-10]. So, Helton is no longer a defendant in this action.
[2] Defendants Frank Strada and Shawn Phillips "remain in this suit in their official capacities" only for the purpose of carrying out any necessary prospective injunctive relief [Doc. 10 at 29-30; *see also* Doc. 36 at 8-9].

("BCCX") [Docs. 101 ¶ 12; 9 ¶ 56]. During 2021, Plaintiff was employed by Shaw Flooring Group, a Prison Industry Enhancement Certification Program ("PIE") partner of the Tennessee Rehabilitative Initiative in Correction ("TRICOR") program [Docs. 100 ¶ 5; 9 ¶ 20]. TRICOR is a state agency, separate from TDOC, that provides occupational training to inmates [Doc. 100 ¶ 3].

In April of 2021, Plaintiff sued the State of Tennessee and other individuals associated with the TDOC over the deduction of his TRICOR wages to satisfy court costs and fees [Doc. 9 ¶ 5]. No individual defendant named in that wage suit is a party in this action [*Id.* ¶¶ 4, 25]. On December 20, 2021, Plaintiff filed a motion to amend his complaint in the wage suit [*Id.* ¶ 25]. On December 21, 2021, Inmate Jobs Coordinator Brian Cox moved Plaintiff from his TRICOR assignment to a job as a reentry clerk in the Career Center at BCCX [Docs. 99 ¶¶ 3, 17, 21; 9 ¶ 26].

On December 22, 2021, Plaintiff filed a prison grievance regarding his reassignment [Doc. 9 ¶ 27]. The grievance went through standard escalation procedures [*Id.* ¶¶ 27-35]. In that process, Defendant Cobble stated that Plaintiff needed to fill his new position as reentry clerk because the previous reentry clerk had held the position longer than policy allowed and Plaintiff was next on the list for that position [*Id.* ¶ 32]. All levels of grievance review affirmed this decision [*Id.* ¶ 27-35]. Plaintiff, however, contends that his TRICOR Supervisor Defendant Lewis fired him in retaliation for the wage suit and based on Defendant Lewis's "personal relationship" with a defendant in the wage suit [*Id.* ¶ 26].

On April 20, 2022, Plaintiff received a scheduling order setting a trial date in the wage suit [*Id.* ¶ 41]. Three weeks later, on May 5, 2022, Defendant Mooneyham informed Plaintiff that Defendant Cobble directed Mooneyham to draw-up reclassification paperwork for Plaintiff's transfer to the Hardeman County Correctional Facility ("HCCF") [*Id.* ¶ 42]. On May 6, 2022, Plaintiff filed a grievance against Defendant Cobble concerning his intent to transfer

2

Plaintiff [*Id.* ¶ 43]. The issue was deemed non-grievable by all three levels of review [*Id.*]. On June 17, 2022, TDOC transferred Plaintiff to HCCF [Doc. 101 ¶¶ 12, 18; Doc. 9 ¶ 78].

Plaintiff alleges that his (1) terminated employment and (2) facility transfer were both acts of retaliation based on Plaintiff's exercise of his First Amendment rights [Doc. 9 ¶¶ 19-20].

### A. Plaintiff's Work Reassignment

Inmate Jobs Coordinator Cox administers BCCX's "Prioritized Register" (Register), which is a waiting list for jobs, classes, or programs at BCCX [Doc. 99 ¶¶ 6, 7]. In September 2015, Plaintiff sent a formal request asking to be waitlisted on the Register for a "CLERK GEN. OFFICE-CAREER CTR" position [*See id.* at 29]. On September 3, 2021, while he was still assigned to TRICOR and the wage suit was ongoing, Plaintiff notified Cox that his entry on the Register for the clerk position was wrong [*Id.* ¶¶ 13, 14]. Specifically, the Register had Plaintiff on the waiting list for the position of "CLGO—Clerk, General Office" rather than the "Clerk, Career Center" job he asked for in 2015 [*Id.* ¶¶ 14-15]. Plaintiff wanted this corrected to reflect that he should have been on the waiting list for this assignment for six (6) years [*Id.* ¶ 16]. Cox accommodated Plaintiff's request and backdated the Register entry [*Id.*]. Per TDOC Policy, "inmates on the Register shall be assigned in the order they are listed on the Register" [*Id.* ¶ 9, at 13]. TDOC policy also states that the Inmate Jobs Coordinator may assign a qualified inmate, even if the inmate wants to remain in their present assignment [*Id.* ¶ 12].

Two months later, in December 2021, the Clerk position Plaintiff requested became available [*Id.* ¶ 17]. TDOC policy provided that an inmate could not stay in the Clerk assignment "longer than 16 months" [Doc. 99 at 19]. Plaintiff was the only inmate on the Register for that position at the time, and he was given the Clerk, Career Center job [*Id.* ¶¶ 18, 21, at 29]. Inmate Jobs Coordinator Cox "made a courtesy call to Allan Lewis" to "notify Lewis that Plaintiff would

3

be moved to the" Clerk position [*Id.*¶ 19]. But "Lewis did not have authority or input over the placement of Plaintiff pursuant to the Register" [*Id.* ¶ 20]. Plaintiff refused to sign a "Job Drop" form for his TRICOR position and informed all relevant parties that he wanted to be removed from the Register for the Clerk position [*Id.* ¶ 27]. He also signed a request to be removed from the Register [Doc. 134-3 at 32]. Plaintiff was placed in the Clerk position, even though he was never interviewed prior to that assignment as was allegedly required by TDOC policy [Doc. 9 ¶¶ 27, 32].

### B. Plaintiff's Transfer

BCCX is a diagnostic institution for male offenders entering TDOC custody [Doc. 101 ¶ 4]. Thus, male inmates come to BCCX for evaluation first before being assigned to another facility [*Id.*]. BCCX is also a programming institution that offers "extensive programming that inmates often need to be eligible for early release, vocational training upon release, and other means of reducing their sentences and preparing for release" [*Id.* ¶ 5].

BCCX also has an Annex facility, which houses "minimum direct or trustee inmates" [Doc. 101 ¶¶ 6-7]. To be eligible for Annex placement, an inmate must be within ten (10) years of his sentence expiration date [*Id.* ¶ 8, at 29]. It is common to transfer BCCX inmates out because they have finished their training or to make room for those who are a priority to receive training [*Id.* ¶ 11]. Plaintiff's life sentence made him both ineligible for the Annex and a lower priority to receive programming at the time he was transferred [*Id.* ¶¶8, 13-14].

During the COVID-19 pandemic, the number of offenders entering TDOC custody declined [*Id.* ¶ 15]. But in the beginning of 2022, "the number of offenders entering BCCX as a diagnostic facility resumed" to pre-pandemic levels [*Id.* ¶ 16]. This required BCCX to make population management transfers [*Id.* ¶ 17]. Under TDOC policy, a "Population Management Transfer" is a change in an inmate's facility assignment "by order of the Director of Classification

4

for the purpose of controlling institutional population levels" [*Id.* at 36]. "Such [transfer] does not require a classification hearing or impact the inmate's custody level" [*Id.*]. Defendant Cobble provided that this routine population management is why Plaintiff was transferred [*Id.* ¶ 18].

Plaintiff received a reclassification hearing on May 10, 2022 [Doc. 9 ¶ 52]. Defendants Mooneyham, Brown, and Koczwara were on the hearing panel [*Id.*]. The reclassification paperwork listed the "Justification, Program Recommendations, and Summary" as "Life sentence, RNA-Low" and Plaintiff's job assignment as "CLGOC" [*Id.*]. On May 13, 2022, BCCX Warden Shawn Phillips upheld the panel's reclassification decision [*Id.* ¶ 53]. On June 9, 2022, days before Plaintiff's transfer, an unnamed BCCX staff member told Plaintiff he was being transferred to HCCF to frustrate Plaintiff's ability to pursue his wage suit and because of "the likelihood of Plaintiff being hurt at HCCF" [Doc. 9 ¶ 74].

Plaintiff's only surviving claims are for violation of 42 U.S.C. § 1983 based on the First Amendment [*See* Docs. 10 at 30; 76]. Specifically, liberally construed, Plaintiff asserts that (1) Defendant Lewis terminated his TRICOR employment in retaliation for exercising his First Amendment rights and (2) Defendants Cobble, Mooneyham, Brown, and Koczwara transferred him to HCCF in retaliation for exercising his First Amendment rights [*See* Docs. 9; 10 at 30].

II.   ANALYSIS

   A.   **The Court Denies Plaintiff's Motions [Docs. 94, 103].**

Plaintiff maintains that (1) he is entitled to summary judgment because Defendants failed to answer his claims within the time permitted, [*see* Doc. 94 at 4-7; Doc. 94-1 ¶ 7], and (2) Defendants' motion for summary judgment should be denied because it was filed outside of the time permitted by the Federal Rules of Civil Procedure and this Court's Scheduling Order, [*see* Doc. 103 at 2]. But the Court accepted the remaining Defendants' answer as timely filed pursuant

to a motion they filed [*See* Doc. 129 at 4-5]. And the Court accepted both Defendants' motion for summary judgment and Plaintiff's motion for summary judgment as timely filed [*See* Doc 130 at 4, 4 n.2]. Therefore, the Court **DENIES** Plaintiff's motions [Docs. 94, 103].

      **B.**      **The Court Grants the Remaining Defendants' Motion [Doc. 96].**

Rule 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Jackson v. United States Postal Serv.*, 149 F.4th 656, 666 (6th Cir. 2025). The Court views the facts in the light most favorable to the nonmoving party, here Plaintiff, and draws all reasonable inferences from those facts in his favor. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Jackson*, 149 F.4th at 666. The moving parties bear the burden of showing that no genuine dispute of material fact exists. *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 517 (6th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986)). But once they have done so, "[t]o survive summary judgment, the nonmoving party must present significant probative evidence putting the material facts in doubt." *Walden v. Gen. Elec. Int'l, Inc.*, 119 F.4th 1049, 1057 (6th Cir. 2024) (cleaned up). "A genuine issue for trial exists only when there is sufficient evidence on which the jury could reasonably find for the plaintiff." *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001) (cleaned up). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

To establish a First Amendment retaliation claim, a plaintiff must prove that (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) "there is a causal

6

Case 3:23-cv-00009-KAC-DCP   Document 145   Filed 11/18/25   Page 6 of 11
PageID #: 1542

connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (citations omitted); *see also McElhaney v. Williams*, 81 F.4th 550, 556 (6th Cir. 2023). As it relates to causation, if "the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Thaddeus-X*, 175 F.3d at 399 (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274 (1977)). "If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Id.* "Conclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial." *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (citations omitted).

Here, the remaining Defendants argue that summary judgment is appropriate because (1) Plaintiff cannot show that Defendant Lewis was responsible for any adverse action taken against him to support his termination-based retaliation claim, and (2) Plaintiff cannot establish element three—a causal connection—as to either retaliation claim [*See* Doc. 97 at 5-6].

### 1. Defendant Lewis Is Entitled To Summary Judgment On Plaintiff's Termination-Based Retaliation Claim.

The Court starts with Plaintiff's termination-based retaliation claim and takes the third element, causation, first. The undisputed evidence demonstrates that Plaintiff initiated the change in his employment by requesting a Register correction just three (3) months before he was placed in the Clerk position [*See* Docs. 9 ¶ 32; 99 ¶ 16 at 27; *see also* Doc. 134 ¶ 10]. The record shows that the change in employment was the result of standard implementation of TDOC's policy on Register placement, which requires the Inmate Jobs Coordinator to fill Register jobs as they become available [Doc. 99 ¶¶ 6-12, at 13]. The records also shows that certain Register positions,

including the Clerk position, have a limit on how long one inmate can hold a position [Doc. 99 at 19]. And Plaintiff's own proof shows that his failure to remove his name from the Register was the reason he was released from his job at TRICOR for the new position [Doc. 134-3 at 38-41, 43].

Plaintiff attempts to create a genuine dispute of material fact by arguing that (1) he was never interviewed and approved for placement on the Register as purportedly was required by TDOC policy; (2) the policy that an inmate cannot hold the Clerk position for more than sixteen (16) months was not enforced in the six (6) years the inmate Plaintiff replaced was in that position; and (3) there is an exception in TDOC policy providing that inmates in the PIE program may not be assigned over the inmate's objection [*See* Doc. 9 ¶ 27; Doc. 134 ¶¶ 59; Doc. 99 at 13]. But the citations to TDOC policy Plaintiff offers to support his argument do not move the needle. First, TDOC policy provides that "[s]ome job positions may require referral for testing, [or] an interview . . . prior to [R]egister placement" [Doc. 99 at 10]. But this citation does not provide that an interview was required for the Clerk position. *See HBKY, LLC v. Elk River Exp., LLC*, 150 F.4th 480, 488 (6th Cir. 2025) (At summary judgment "district courts 'need consider only the cited materials.'"(quoting Fed R. Civ. P. 56(c)(3))). And TDOC policy more specifically provides that (1) vacancies must be filled by an inmate on the Register "[u]nless there are no qualified and eligible inmates on the register for the position" and (2) inmates cannot be **assigned to** the PIE program without their request or consent [Doc. 99 at 13]. On this record, Plaintiff was the sole candidate on the Register for the Clerk position when it became open [Doc. 99 ¶¶ 17-18]. And Plaintiff was **removed from**, not **assigned to**, the PIE program. Therefore, Plaintiff's arguments are without merit. And he has failed to create a genuine dispute of material fact as to the third element of his termination-based retaliation claim—causation.

And even if Plaintiff could hypothetically establish causation (he has not), he has failed to establish that Defendant Lewis took an adverse action against him, as is required to establish the second element of his claim. Plaintiff's termination-based retaliation claim is only against Defendant Lewis. But the undisputed evidence demonstrates that Inmate Jobs Coordinator Cox executed Plaintiff's job transfer independent of Defendant Lewis [Doc. 99 ¶ 16, 20]. In fact, the evidence demonstrates that Defendant Lewis lacked "authority or input over" Plaintiff's placement [Doc. 99 ¶ 20; *see also* Doc. 100 ¶¶ 2, 8-9]. Thus, there is also no genuine dispute of material fact regarding whether Defendant Lewis took an adverse action against Plaintiff. *See Shehee v. Luttrell*, 199 F.3d 295, 301-02 (6th Cir. 1999) (holding that despite prisoner's allegation that prison employees instigated the loss of his position, the prison employees cannot be liable because they were not involved in the decision to terminate). Therefore, Defendant Lewis is entitled to summary judgment on Plaintiff's termination-based retaliation claim.

**2. The Remaining Defendants Are Entitled To Summary Judgment On Plaintiff's Transfer-Based Retaliation Claim.**

Plaintiff maintains that he was transferred to HCCF because he exercised his First Amendment right to file grievances and access the courts [Doc. 9 ¶ 84]. But Plaintiff must "point to specific, nonconclusory allegations reasonably linking h[is] speech to [TDOC] discipline." *See Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003) (quoting *Farmer v. Cleveland Pub. Power*, 295 F.3d 593, 602 (6th Cir. 2002)). "Conclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial." *Murray*, 84 F. App'x at 556.

Here, Plaintiff has failed to demonstrate "concrete and relevant particulars" that would create a genuine issue of fact for trial. The evidence shows that during 2022, TDOC was experiencing an increase in the number of new inmates coming into TDOC custody as population transfers previously slowed by the COVID-19 pandemic began to return to pre-pandemic levels

9

Case 3:23-cv-00009-KAC-DCP    Document 145    Filed 11/18/25    Page 9 of 11
PageID #: 1545

[Doc. 100 ¶¶ 15-16; *see also* Doc. 9 ¶ 58].  Because BCCX was TDOC's primary diagnostic facility, male inmates entered TDOC custody through BCCX for diagnostic purposes and were subsequently forwarded to other facilities as appropriate [Doc. 100 ¶ 4].  This function of BCCX, in addition to its extensive programming, made it a priority for both new inmates and those near release [*Id.* ¶ 11].  Plaintiff was neither.  Plaintiff himself admits that he had "no programming needs" at BCCX and the facility provided him with "no relevant educational or program opportunities" [Doc. 134 ¶¶8, 9].  These facts show that there is no genuine issue of fact for trial.

Liberally construing his filings, Plaintiff relies on assertions in his Amended Complaint about a statement made by an unnamed "BCCX staff member," [*see* Doc. 9 ¶ 74], and an affidavit from an HCCF inmate to support his claim, [*see* Doc. 134-3 at 60], [Docs. 134 at ¶¶43-44, 47-48].  Neither creates a genuine dispute of material fact at summary judgment.

The statement purportedly made to Plaintiff by an unnamed "BCCX staff member" is inadmissible hearsay that the Court does not consider at summary judgment.  The statement is a classic out of court statement being offered for the truth of the matter asserted.  *See* Fed. R. Evid. 801.  And Plaintiff has not provided any facts that would allow the Court to determine that the statement falls within a hearsay exception.  Plaintiff has not (1) identified the BCCX staff member who spoke, (2) provided any facts regarding how the staff member knew what he or she said or the context in which he or she was authorized to speak, or (3) indicated that the staff member is unavailable.  Accordingly, the Court cannot properly consider the statement in assessing summary judgment.  *See Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 378 (6th Cir. 2002).

The statements in the affidavit from an HCCF inmate fair no better.  Again, Plaintiff offers hearsay that is generally inadmissible, and he provides no facts that would allow the Court to determine that the statements fall within a hearsay exception.  *See id.*  But even if the statements

10

Case 3:23-cv-00009-KAC-DCP   Document 145   Filed 11/18/25   Page 10 of 11
PageID #: 1546

were admissible, they do not create a genuine dispute of material fact regarding Plaintiff's transfer-based retaliation claim. In the affidavit, the inmate asserts that a "CoreCivic Inc. employee" who "oversee[s] the Dog Training Program" at HCCF told the inmate about Plaintiff's impending arrival at HCCF and generally warned the inmate to "watch out for" Plaintiff and not to talk with Plaintiff about the Dog Training Program [*See* Doc. 134-3 at 60]. These statements say nothing about the basis for Plaintiff's transfer. And they do not "link" Plaintiff's protected speech to his transfer. *See Rodgers*, 344 F.3d at 602. Accordingly, Plaintiff's arguments fail. And the remaining Defendants are entitled to summary judgment on Plaintiff's transfer-based retaliation claim. So, the Court **GRANTS** the motion for summary judgment [Doc. 96].

### III. CONCLUSION

For the reasons above, the Court (1) **DENIES** (a) Plaintiff's motion for summary judgment [Doc. 94] and (b) Plaintiff's "Motion to Deny Defendants' Motion for Summary Judgment" [Doc. 103]; and (2) **GRANTS** the motion for summary judgment filed by the remaining Defendants [Doc. 96]. **Because the Court has dismissed all claims that remain against the Defendants who remain in this action, the Court CANCELS the currently-scheduled trial of this matter.** The Court notes that Plaintiff's "Motion to Revive Party Defendant and § 1983 Claim" [Doc. 137] is still pending.

SO ORDERED.

ENTER:

s/ Katherine A. Crytzer
KATHERINE A. CRYTZER
United States District Judge
